UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

TRAVIS P.,

      Plaintiff,

v.                            **MEMORANDUM OF LAW & ORDER**
                             Civil File No. 22-02245 (MJD/DTS)

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

      Defendant.

---

Bryan Konoski, Konoski & Partners, P.C., and James H. Greeman, Greeman Toomey, Counsel for Plaintiff.

Ana H. Voss, United States Attorney's Office, and James D. Sides and Marisa Silverman, Social Security Administration, Counsel for Defendant.

---

## I.    INTRODUCTION

This matter is before the Court on the parties' cross-Motions for Judgment on the administrative record.  (Doc. 23, 27.)

1

## II.    RELEVANT FACTS

Plaintiff Travis P. [1] filed an application for supplemental security income insurance benefits in July 2020, claiming that he became disabled on April 1, 2018.  (Admin. Rec. (Doc. 11) at 260-68.)  Plaintiff alleged disabling conditions including neck, back, leg, and foot problems, carpal tunnel, tennis elbow, arthritis, depression, and learning disability.  (Id. at 291.)  This is Plaintiff's third application for social-security disability benefits.  (Id. at 71-90, 106-19.)  His previous applications, which relied on the same or similar disabling conditions, were denied in March 2018 and April 2020.  (Id.)

An individual is considered disabled for purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that he is not engaged in any "substantial gainful activity." Id. § 416.920(a)(4)(i). If he is not, the claimant must then establish that he has a severe medically determinable impairment or combination of impairments at step two. Id. § 416.920(a)(4)(ii). At step three the Commissioner must find that the claimant is disabled, if the claimant satisfies the first two steps and the claimant's impairment meets or is medically equal to one of the listings in 20 C.F.R. Part 404, Subpart P, App'x 1. Id. § 416.920(a)(4)(iii). If the claimant's impairment does not meet or is not medically equal to one of the listings, the evaluation proceeds to step four. The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving that he

cannot perform any past relevant work.  Id. § 416.920(a)(4)(iv); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find that the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(v).

Plaintiff's application for benefits was denied initially and on reconsideration.  (Admin. Rec. at 177-81, 185-88.)  In June 2021, an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application.  Plaintiff testified at this hearing, accompanied by an attorney.  (Id. at 34-67.)  After the hearing, the ALJ determined that Plaintiff had multiple severe impairments: osteoarthritis, carpal tunnel syndrome, lumbar degenerative disc disease, obesity, major depressive disorder, and borderline intellectual functioning.  (Id. at 22.)  The ALJ found, however, that Plaintiff's impairments did not meet or medically equal any listed impairments.  (Id. at 23.)  The ALJ then determined that Plaintiff had the capacity for work at the light exertional level with some physical restrictions.  (Id. at 24.)  As relevant here, the ALJ

limited Plaintiff to frequent handling and fingering with his left upper extremity only, and frequent but not constant reaching with either extremity.  (Id.)  The ALJ also limited Plaintiff to simple, routine tasks, only occasional interaction with supervisors and co-workers, and no interaction with the general public.  (Id.)  Although these restrictions meant that Plaintiff was precluded from his past employment, the ALJ found that there were jobs Plaintiff could perform in the national economy.  (Id. at 27.)  The ALJ therefore concluded that Plaintiff was not disabled.  (Id. at 28.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and this lawsuit followed.  See 42 U.S.C. § 405(g) (providing for judicial review of final decisions of the Commissioner).

### III. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION THAT PLAINTIFF IS NOT DISABLED

The Court's review of the Commissioner's decision is limited to determining whether that decision is "supported by substantial evidence on the record as a whole."  McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).  "Substantial evidence . . . is more than a mere scintilla."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  This "threshold . . .

is not high." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." Perks v. Astrue, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

### A.     Supportability and Consistency Analysis

Plaintiff first challenges the ALJ's evaluation of the state agency consultants' opinions. In particular, Plaintiff claims that the ALJ failed to sufficiently evaluate the supportability and consistency of the opinions of state consultants Dr. Elizabeth Wientraub and Dr. Andrea Paulsen, because Dr. Weintraub imposed no restrictions on Plaintiff's ability to use his hands (Admin. Rec. at 137) but Dr. Paulsen limited Plaintiff to only occasional fingering with his right hand. (Id. at 160.) According to Plaintiff, the ALJ improperly ignored this discrepancy, rather than addressing the conflict and determining which restriction was supported by other evidence and consistent with the record. Plaintiff argues that if the ALJ had adopted Dr. Paulsen's restriction, Plaintiff would have been found disabled because there are no jobs he could perform with the restriction.

As an initial matter, Plaintiff is incorrect that a finding of disability would necessarily follow if Dr. Paulsen's occasional-fingering limitation had been included in the RFC. The vocational expert did not testify that Plaintiff would be unable to work if limited to occasional fingering. Rather, the vocational expert stated that Plaintiff would be unable to perform one of the three occupations the expert had previously found available to a person with Plaintiff's RFC. (Admin. Rec. at 62-63.[2]) Later, Plaintiff's attorney questioned the ALJ about whether Plaintiff could perform any of the three occupations if limited to occasional right-hand handling in addition to the disputed occasional-fingering limitation; the expert testified that Plaintiff would be unable to perform those occupations. (Id. at 65.) But no medical testimony in the record—including the state agency consultant's opinion at issue here—imposed an occasional-handling limitation. The expert's testimony in this regard was therefore consistent with the ALJ's

---

2 As the Commissioner notes, a portion of the hearing recording was inaudible. (Admin. Rec. at 63.) But the vocational expert's testimony that a restriction to occasional fingering "would eliminate the inspector hand packager . . . [inaudible] the classifier would also remain" indicates that the expert testified that both the classifier and housekeeper position would remain within Plaintiff's RFC even if that RFC limited Plaintiff to occasional fingering.

ultimate determination that Plaintiff is not disabled, and the ALJ's failure to incorporate an occasional-fingering limitation is, at most, harmless error.

But Plaintiff's challenge fails for a more fundamental reason: the ALJ did not err in considering the state agency consultants' opinions. An ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." Bowers v. Kijakazi, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). "The first two factors—supportability and consistency—are the most important." Id. (citing 20 C.F.R. § 404.1520c(a)). Indeed, the regulations provide that the ALJ "will explain how he considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ need not, however, "explicitly reconcile every conflicting shred of medical evidence." Austin v. Kijakazi, 52 F.4th 723, 729 (8th Cir. 2022) (cleaned up).

The ALJ found the consulting experts' opinions "somewhat persuasive," explaining that some of the limitations in those opinions were supported by and

consistent with the record as a whole, while some limitations—namely, certain adaptive limitations—were not. (Admin. Rec. at 26.) The ALJ specifically noted that he imposed some manipulative limitations due to Plaintiff's carpal tunnel syndrome, in keeping with his determination that the state agency consultants' opinions were "somewhat persuasive," not wholly persuasive.

The regulations do not require the ALJ to engage in an exhaustive comparison of every available medical opinion to determine whether that opinion might vary slightly from other opinions in the record. "[T]he ALJ is free to accept some, but not all, of a medical opinion." Austin v. Kijakazi, 52 F.4th 723, 729 (8th Cir. 2022). And it is "the ALJ's role to resolve conflicts in experts' opinions." Clay v. Barnhart, 417 F.3d 922, 930 (8th Cir. 2005). The ALJ did that here in a thorough review of the medical record. Substantial evidence supports the ALJ's determination regarding Plaintiff's manipulative limitations.

### B. Dr. Cavanaugh's Opinion

Plaintiff also argues that the ALJ erred in rejecting the opinion of Plaintiff's treating mental-health provider, Dr. D. Susan Cavanaugh, regarding the functional limitations Plaintiff's anger-management issues imposed. This failure,

9

according to Plaintiff, led the ALJ to formulate an RFC that was not supported by substantial evidence.

Dr. Cavanaugh submitted a medical source statement dated August 31, 2021, that rated Plaintiff's ability to perform certain work-related activities. (Admin. Rec. at 1547-49.)  On the check-box form, she opined that Plaintiff would have mild or moderate limitations in understanding, remembering, or carrying out instructions.  (Id. at 1547.)  She further opined that Plaintiff would have marked limitations in interacting with supervisors and co-workers and responding appropriately to work pressures and changes in routine, and a moderate limitation in interacting with the public.  (Id. at 1548.)  Her narrative comments under this section of the form noted that Plaintiff has "intermittent explosive disorder which impairs his ability to regulate his emotional response in stressful situations."  (Id.)  Plaintiff argues that the ALJ insufficiently addressed the opinion regarding Plaintiff's anger-management issues, and that the ALJ's proffered reasons for rejecting the opinion are insufficient.

The ALJ determined, however, that Dr. Cavanaugh's opinion about Plaintiff's ability to control his temper were not borne out by the medical records, which consistently described Plaintiff as pleasant and cooperative.  (Id. at 26-27.)

10

Indeed, the medical records reflect that Plaintiff often reported no anger-management issues, despite also reporting stressful situations in his life.  (See id. at 638 ("[C]lient shared he had no issues with his anger this month and has been able to control it better . . . . [Although he] not had much sleep and his pain continues to keep him up which has led to some irritability and anger."); id. at 658 (same); id. at 642 (describing "Mood/anxiety" as "controlled"); see also id. at 653 (describing Plaintiff's affect as "normal/bright").)  And Plaintiff's claim that anger issues nearly caused him to lose his housing is only partially true:  Plaintiff told his therapist that he "got in trouble at his apartment complex due to his anger issue and smoking marijuana in his apartment."  (Id. at 639.)

To be sure, there is information in the record from which the ALJ could have determined that Plaintiff's anger-management difficulties were as limiting as Dr. Cavanaugh believed.  (See, e.g., id. at 660 (describing Plaintiff's mood as "angry and frustrated").)  But the standard is not whether some evidence detracts from the ALJ's evaluation of the medical records.  See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (finding that reversal is not appropriate "simply because some evidence supports a conclusion other than that reached by the ALJ.").  The ALJ properly examined the record as a whole and determined

11

that Dr. Cavanaugh's opinion regarding the limiting effects of Plaintiff's intermittent explosive disorder was not entirely consistent with that record. That determination is supported by substantial evidence.

### B.     RFC Determination

Plaintiff's final argument is that the ALJ's RFC determination is not supported by the evidence, again arguing that the ALJ erred in not imposing the fingering limitation in Dr. Paulsen's consulting opinion. Plaintiff argues that the only evidence in the record supported a limitation to occasional fingering, contending that the ALJ simply invented the frequent-fingering limitation he imposed. Plaintiff also repeats his contention that a limitation to occasional fingering would eliminate all jobs and require a finding that Plaintiff is disabled. As addressed above, however, this contention is incorrect.

An RFC determination must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013). A claimant's RFC is a matter solely for the ALJ to determine. 20 C.F.R. § 404.1546(c); see also Mark S. v. Saul, No. 18-CV-02936-HB,

2020 WL 1043795, at *7 (D. Minn. Mar. 4, 2020) ("The ALJ is responsible for assessing a claimant's RFC.").

Plaintiff cites only to Dr. Paulsen's opinion regarding his ostensible occasional-fingering limitation. But there is no other medical evidence in the record supporting this limitation. While Plaintiff testified that his hands cramp and he drops things, such testimony is not medical evidence of a functional restriction. No other consulting or treating medical provider restricted Plaintiff's ability to use his fingers. The ALJ properly evaluated the medical record as a whole and determined that, in light of Plaintiff's carpal tunnel syndrome, some manipulative limitations were appropriate, albeit not the more-restrictive limitation Dr. Paulsen imposed. "There is no requirement that an RFC finding be supported by a specific medical opinion." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016). The ALJ's RFC determination is supported by substantial evidence in the record.

### A. Conclusion

Substantial evidence supports the ALJ's determination that Plaintiff is not disabled.

Accordingly, based on all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED:**

(1)   Plaintiff's Motion for Judgment **[Doc. 23]** is **DENIED**;

(2)   Defendant's Motion for Summary Judgment **[Doc. 27]** is **GRANTED**; and

(3)   This matter is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  October 25, 2023

                                       s/Michael J. Davis
                                       Michael J. Davis
                                       United States District Court